DICK CARRERO GUEITS, demandante y recurrido, *v.* DEPARTAMENTO DE EDUCACIÓN Y JUNTA DE APELACIONES DEL SISTEMA DE ADMINISTRACIÓN DE PERSONAL, demandados y peticionarios.

*Números:* CE-94-8        *Resueltos:* 30 de octubre de 1996
CE-94-17

*Zoraida Samó Maldonado*, abogada de la Junta de Apelaciones del Sistema de Administración de Personal, peticionaria; *Pedro A. Delgado Hernández, Procurador General, Carlos Lugo Fiol, Subprocurador General, y María Adaljisa Dávila, Procuradora General Auxiliar*, abogados del Departamento de Educación, peticionario.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

Debemos resolver si un escrito de apelación enviado por correo se perfecciona ante la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.) en el momento en que es depositado en el correo o en el momento en que es recibido por dicho foro.

Debemos aclarar además el alcance de la norma que sobre legitimación activa establecimos en *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692, 703 (1975), en lo que respecta a la capacidad de los organismos administrativos para comparecer ante un tribunal que revisa sus actuaciones.

## I

El Sr. Dick Carrero Gueits apeló ante J.A.S.A.P. de una decisión del Secretario del Departamento de Educación (en aquel momento Departamento de Instrucción Pública). El escrito de apelación fue depositado en el correo el 14 de marzo de 1990 y fue recibido en la secretaría de J.A.S.A.P. el 16 de marzo de 1990, un (1) día después de haber vencido el plazo de treinta (30) días establecido por la Sec. 7.15 de la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975.[1] J.A.S.A.P. desestimó la apelación por falta de jurisdicción, por lo cual el señor Carrero Gueits presentó un recurso de revisión en el entonces Tribunal Superior, Sala de San Juan. El 2 de noviembre de 1993, luego de varios trámites procesales, el Tribunal Superior (Hon. Ángel O. Hermida, Juez) dictó sentencia y resolvió que constituyó un error de derecho de J.A.S.A.P. el haber desestimado la apelación.

Inconformes con la sentencia dictada, recurrieron ante nos el Departamento de Educación y J.A.S.A.P., mediante recursos de *certiorari* separados. El 18 de marzo de 1994 dictamos resolución mediante la cual se consolidó ambos recursos, y los expedimos.

El Departamento de Educación, representado por la Oficina del Procurador General, sostiene que el escrito de apelación se perfecciona en el momento en que es recibido por J.A.S.A.P., no en el momento en que es depositado en el correo.

---

[1] 3 L.P.R.A. sec. 1395.

Por su parte, J.A.S.A.P. argumenta, además, que tiene legitimación activa para comparecer como parte interventora en el caso de epígrafe por ser parte interesada y perjudicada.

Pasamos a discutir ambos planteamientos por separado.

## II

La Sec. 7.15 de la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1395, en lo pertinente, dispone:

> El procedimiento de apelación será el siguiente:
> (1) La parte afectada según la sec. 1394 de este título, deberá presentar escrito de apelación a la Junta *dentro de treinta (30) días a partir de la notificación de la acción o decisión objeto de la apelación.*

El inciso 2.2 del Art. 2 del Reglamento Núm. 3965 de 9 de agosto de 1989, conocido como "Reglamento Procesal de la Junta de Apelaciones del Sistema de Administración de Personal", establece, por su parte y en lo pertinente:

> La apelación se radicará en la Secretaría de la Junta dentro del término de treinta (30) días calendario a partir de la fecha de notificación o conocimiento de la acción o decisión objeto de apelación; excepto cuando se trate de acciones radicadas a tenor con la Sección 5.7 de la Ley, en cuyo caso el término será de quince (15) días a partir de la notificación de la acción. *Para determinar la fecha de radicación se atenderá única y exclusivamente la fecha en la que el escrito de apelación es presentado y sellado en la Secretaría de la Junta.* (Énfasis suplido.)

En *Lasalle v. J.A.C.L.*, 115 D.P.R. 805 (1984), resolvimos que bajo el inciso (d) del Art. 31 de la Ley Núm. 76 de 24 de junio de 1975, ley que creó la Junta de Apelaciones sobre Construcciones y Lotificaciones[2] (J.A.C.L.), una moción de reconsideración dirigida a dicha Junta se

---

[2] 23 L.P.R.A. sec. 72c(d).

considerará radicada en la fecha en que la misma se presente en la Secretaría de la J.A.C.L. La moción de reconsideración en dicho caso había sido depositada en el correo con tiempo suficiente, para haber llegado a su destino dentro del término de quince (15) días requeridos.[3]

No es significativo que en el caso *Lasalle v. J.A.C.L.*, supra, se tratara de una moción de reconsideración y en el caso de autos se trata de un recurso de apelación. En ambas situaciones los plazos son jurisdiccionales. Lo importante es examinar el lenguaje de los estatutos aplicables.

El inciso (d) del Art. 31 de la Ley Núm. 76, *supra*, bajo consideración en *Lasalle v. J.A.C.L.*, supra, establece lo siguiente:

> *Facultades y deberes de la Junta*
> (d) La Junta de Apelaciones podrá considerar una moción de reconsideración que someta cualquier parte interesada o afectada, la Junta de Planificación, o la Administración de Reglamentos y Permisos, en relación con cualquier actuación o resolución que realice o adopte siempre que dicha moción se radique ante la Junta de Apelaciones dentro de los primeros quince (15) días del depósito en el correo de la notificación de tal actuación o resolución.

Ambas disposiciones tienen un propósito similar, que es establecer respectivamente el término para apelar ante J.A.S.A.P. y el término para interponer una moción de reconsideración ante J.A.C.L. No existe duda que ambos términos son de carácter jurisdiccional. Sin embargo, el lenguaje utilizado en dichos estatutos es diferente. La expresión "dentro de los primeros quince (15) días" (23 L.P.R.A. sec. 72c(d)) fue objeto de análisis en *Martínez v. Junta de Planificación*, 109 D.P.R. 839, 841 (1980), donde expresamos que "[l]a palabra clave *'primeros'* adicionada a la nueva ley —en contraste con la derogada— tiende a ro-

---

[3] Fue depositada en el correo de Arecibo el 9 de noviembre de 1983 y fue recibida en la Secretaría del organismo administrativo el 15 de noviembre, tres (3) días después de transcurrido el término de quince (15) días.

bustecer el propósito legislativo de estimar el período envuelto de carácter mandatorio".([4])

El tribunal de instancia concluyó que "[n]o existiendo la palabra 'primeros' en el estatuto que nos ocupa, no existe tampoco razón para suponer que el legislador pretendió aquí que el plazo fuese tratado con comparable rigidez". (Énfasis suplido.)

Tal conclusión es incorrecta. En *Martínez v. Junta de Planificación*, supra, pág. 842, resolvimos que "es requisito indispensable radicar reconsideración ante la Junta dentro del término de treinta (30) días a partir de la notificación". En este contexto expresamos que el lenguaje claro y preciso utilizado para computar el término dispuesto ("dentro de los primeros treinta (30) días" —23 L.P.R.A. sec. 72c(d)—) tiende a robustecer el propósito legislativo de estimar que dicho término es de carácter mandatorio.

De lo anterior no podemos concluir que un estatuto que no contenga la misma expresión al establecer los términos para acudir a un foro administrativo no sean de carácter mandatorio. No existe duda que el término de treinta (30) días para apelar ante J.A.S.A.P. es mandatorio, aunque la disposición legislativa que lo establece no contiene la referida expresión. Nuestra interpretación en *Lasalle v. J.A.C.L.*, supra, del Art. 31(d) de la Ley Núm. 76, *supra*, no dependió de que este artículo contenía el lenguaje "dentro de los *primeros* ... días" (énfasis suplido), por lo cual dicha interpretación es aplicable al caso de autos.

La interpretación de la Sec. 7.15(1) de la Ley Núm. 5, *supra*, 3 L.P.R.A. sec. 1395(1), contenida en el reglamento vigente de J.A.S.A.P., es que para determinar la fecha de "radicación [de un escrito de apelación enviado

---

([4]) Sólo existe otro estatuto que contiene el mismo lenguaje de los "primeros ... días" y es el que establece las condiciones para solicitar la reconsideración de una decisión de la Junta de Planificación: Ley Núm. 75 de 24 de junio de 1975 (23 L.P.R.A. sec. 63d(a)) la cual fue objeto de interpretación en *Martínez v. Junta de Planificación*, 109 D.P.R. 839 (1980).

por correo], se atenderá única y exclusivamente la fecha en la que el escrito de apelación es presentado y sellado en la Secretaría de la Junta". Art. 2.2 del Reglamento Procesal de la Junta de Apelaciones del Sistema de Administración Personal, *supra*. Dicha interpretación de J.A.S.A.P. no le mereció "deferencia y respeto" al tribunal de instancia porque el reglamento anterior interpretaba la misma disposición del estatuto de forma diferente. Señaló el tribunal que J.A.S.A.P. tiene autoridad para adoptar y enmendar su reglamento, pero ello no significa que J.A.S.A.P. pueda a su antojo cambiar el significado del estatuto variando lo dispuesto al efecto en su reglamento, sin otro punto de referencia que su propio irrestricto arbitrio para ejecutar tales variaciones.

████ En el pasado hemos situado varios principios a los fines de considerar la validez de la reglamentación adoptada por las agencias administrativas. La función de los tribunales generalmente ha de ir dirigida a evaluar: "(1) si la actuación administrativa está autorizada por la ley; (2) si se delegó poder de reglamentación; (3) si la reglamentación promulgada está dentro de los amplios poderes delegados; (4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley orgánica y de las leyes especiales, y (5) si la reglamentación es arbitraria o caprichosa". *M. & B.S., Inc. v. Depto. de Agricultura*, 118 D.P.R. 319, 326 (1987); *cfr. Motor Vehicle Mfrs. Assn. v. State Farm Mut.*, 463 U.S. 29 (1983). Un reglamento para implantar la ejecución de una ley puede complementarla, pero no estar en conflicto con ésta. *P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400, 409 (1980). La preocupación evidenciada por esta norma va encaminada a examinar la cuestión sustantiva de si la regla está de acuerdo con las disposiciones estatutarias bajo las cuales se promulgó.

████ Sin embargo, que la acción administrativa esté subordinada a los límites del estatuto, no garantiza que el reglamento aprobado sea válido. Otro de los principios de

carácter obligatorio es que las agencias administrativas no pueden promulgar reglas caprichosas y arbitrarias. Es necesario que la regla sea razonable.[5] Es función del tribunal el determinar si existe una relación o conexión racional entre una regla o reglamento y el estatuto. El ataque contra la reglamentación adoptada para poder ser exitoso tiene que demostrar que las normas aplicadas son arbitrarias por descansar en "motivos desvinculados al propósito de la reglamentación". *Román v. Trib. Exam. de Médicos*, 116 D.P.R. 71, 80 (1985).

No existe controversia en este caso de que J.A.S.A.P. actuó en conformidad con el poder delegado, pues la Sec. 7.18 de la Ley Núm. 5, *supra*, 3 L.P.R.A. sec. 1398, le autoriza a aprobar los reglamentos necesarios para instrumentar todas las facultades y obligaciones que dicha ley le asigna. Debemos determinar, entonces, si la interpretación que hizo la agencia en su reglamento de la Sec. 7.15 de la Ley Núm. 5, *supra*, es arbitraria.

■ En primer lugar, J.A.S.A.P. señala que no existe impedimento para que al momento de adoptar su nuevo reglamento, según el mandato de la Sec. 1.6 de la Ley de Procedimento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2105), aprovechara la oportunidad para reexaminar y atemperar el lenguaje de su reglamento en conformidad con la letra clara de la Sec. 7.15 de la Ley Núm. 5, *supra*, y a la luz de su experiencia administrativa, tomando en consideración, además, el derecho vigente de Puerto Rico y la jurisprudencia del Tribunal Supremo. Tenemos que coincidir con la posición de J.A.S.A.P. El poder de reglamentación concedido a las agencias administrativas conlleva el poder de revisar y cambiar sus reglamentos.

---

[5] D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, Colombia, Ed. Forum, 1993, pág. 149.

En segundo lugar, J.A.S.A.P. señala que al cambiar la interpretación de la Sec. 7.15 de la Ley Núm. 5, *supra*, en su reglamento de 9 de agosto de 1989 tuvo en cuenta la interpretación de una disposición similar en *Lasalle v. J.A.C.L.*, supra. Lo anterior nos lleva a concluir que J.A.S.A.P. no actuó arbitrariamente al interpretar el estatuto. Asumiendo que la Sec. 7.15(1) de la Ley Núm. 5, *supra*, fuera ambigua —que consideramos que no lo es, como señalamos anteriormente—, la cuestión que los tribunales deben determinar es si la interpretación de la agencia administrativa es razonable. Dicha interpretación no tiene que ser la única posible ni tiene que ser la más sabia. Véase *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 843 (1984). En este caso, la interpretación del estatuto por parte de J.A.S.A.P. no es arbitraria y, por lo tanto, debe prevalecer.

## III

El tribunal de instancia expresó en su Sentencia de 2 de noviembre de 1993 que tenía graves dudas de que J.A.S.A.P. fuese parte interesada y perjudicada en este caso, y que tuviese acción legitimada para comparecer como parte interventora. Posteriormente, en su "Orden" de 3 de diciembre de 1993, dictada en reconsideración, determinó que "[l]uego de considerar el asunto nuevamente hemos llegado a la conclusión de que J.A.S.A.P. realmente no tiene tal acción legitimada, y que ello es motivo suficiente para denegar no sólo su moción de reconsideración, sino también su solicitud de intervención original". J.A.S.A.P. sostiene, por el contrario, que sí tiene acción legitimada para comparecer como parte interventora en el caso de epígrafe, por ser parte interesada y perjudicada.

En *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692, 703 (1975), establecimos la norma siguiente:

... en ausencia de una expresa autorización estatutaria, se reconoce capacidad como parte a los organismos administrativos: (1) cuando sus decisiones implican la formulación de una política pública y la revisión de su decisión ante un tribunal puede constituir un ataque a esa política pública; y (2) cuando el organismo es afectado, es "parte interesada y perjudicada" por la decisión de un tribunal que revisa sus actuaciones.

J.A.S.A.P. apoyó su solicitud de intervención en este texto y argumenta que tiene capacidad jurídica para comparecer como parte en el caso utilizando los criterios que establecimos en *Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407 (1982).([6])

Sin embargo, consideramos que las circunstancias del caso de autos son diferentes de las de *Murphy Bernabe v. Tribunal Superior*, supra, en el cual la Junta de Apelaciones sobre Construcciones y Lotificaciones presentó un recurso de *certiorari* ante este Tribunal para defender una decisión suya "estrictamente cuasi judicial". En cambio, en este caso la Junta de Apelaciones del Sistema de Administración de Personal compareció ante el tribunal de instancia, y comparece ahora ante nos, para defender la corrección de su reglamento, o sea, para defender una actuación cuasi legislativa. En *Murphy Bernabe v. Tribunal Superior*, supra, se decidió que la Junta de Apelaciones sobre Construcciones y Lotificaciones no tiene "capacidad jurídica" para comparecer ante los tribunales para defender sus decisiones cuando ha actuado en el ejercicio de su función judicial.([7])

---

([6]) En *Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407 (1982), señalamos que la doctrina de la capacidad jurídica contiene los requisitos siguientes: (a) es indispensable que el promovente de la causa·de acción alegue haber sufrido un claro y palpable daño; (b) el daño debe ser real, inmediato y preciso, no ser abstracto o hipotético; (c) la causa de acción debe surgir bajo el palio de la Constitución o de una ley, y (d) debe establecerse una conexión entre el daño y la causa de acción ejercitada.

([7]) En el referido caso, el Juez Asociado Señor Rigau emitió una opinión concurrente en parte y disidente en parte con la cual concurrieron el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Díaz Cruz. Según dicha opinión se "sostendría la capacidad jurídica de la Junta de Apelaciones sobre Construcciones y Lotificaciones para acudir a este Tribunal o defender el interés público". El Juez Asociado Señor Martín emitió una opinión concurrente, en la cual señaló que en

El profesor Jaffe señala que en este contexto no se trata de una cuestión de *standing* para solicitar una revisión judicial, "but to appeal from the adverse judgment of a lower court in a judicial review instituted against the authority. It came to me particularly as a surprise to learn that many courts, particularly in the past, have held that an authority (at least if it is a *'quasi-judicial'* authority) cannot appeal an adverse judgment unless the statute itself provides otherwise".[8] (Énfasis suplido y escolio omitido.)

El pensamiento del profesor Jaffe es similar a la posición sostenida en la opinión disidente del caso *Murphy Bernabe v. Tribunal Superior*, supra. Sin embargo, en este caso no es necesario adoptar dicha norma en toda su amplitud, pues la situación del caso de autos es diferente de la de *Murphy Bernabe v. Tribunal Superior*, supra. Resolvemos que J.A.S.A.P. tiene legitimación activa para comparecer ante nos para defender la corrección de su reglamento, por cuanto es parte "interesada y perjudicada" por la decisión del tribunal de instancia.

Por los fundamentos antes expuestos, *se dictará sentencia en la que se revoca la recurrida.*

Los Jueces Asociados Señores Negrón García, Hernández Denton y Fuster Berlingeri concurrieron sin opinión escrita.

---

cuanto a la cuestión de la capacidad jurídica (*standing*) de la Junta para comparecer ante el Tribunal para defender su decisión concurría con el resultado en el sentido de que no tiene tal capacidad, pero que no estaba de acuerdo con todo el razonamiento utilizado en apoyo de tal resultado. Señaló, además, que dada la conclusión a que llegó el Tribunal respecto a los méritos de la revisión que confirmó la decisión de la Junta, creía innecesario la consideración de la cuestión de la capacidad jurídica de dicha Junta de Apelaciones.

[8] L.L. Jaffe, *Judicial Control of Administrative Action*, Boston-Toronto, Ed. Little, Brown and Company, 1965, pág. 537.