*1016 TEXTO COMPLETO DE LA SENTENCIA
La parte recurrente Club Gallístico de Puerto Rico (en adelante Club Gallístico), solicita la revisión del Reglamento Administrativo y de Lidias de Gallos de Puerto Rico, Reglamento Núm. 6519 del 12 de septiembre de 2002 (Reglamento Administrativo Núm. 6519 de 2002), aprobado por la parte recurrida, el Departamento de Recreación y Deportes (en adelante el DRD), que enmendó el Reglamento Administrativo y de Lidias de Gallos, Reglamento Núm. 5562 del 5 de marzo de 1997 (Reglamento Administrativo Num. 5562 del 1997).
Alega, en síntesis, que incidió el DRD al aprobar un reglamento administrativo que incumple con la Ley de Flexibilidad Administrativa y Reglamentaria para el Pequeño Negocio (LEFAR) y con la Ley de Procedimiento Administrativo Uniforme (LPAU).
Considerado el recurso y su oposición, se expide el auto de revisión judicial y se resuelve que no se cumplió con el orden legal de la LEFAR, para aprobar el Reglamento Administrativo Núm. 6519 de 2002. Por lo tanto, no está vigente.
I
El DRD sometió, el 13 de noviembre de 2001, unas enmiendas al Reglamento Administrativo y de Lidias de Gallos de Puerto Rico, Reglamento Núm. 5562 del 5 de .marzo de 1997. (Ap. 2, págs. 82-159.) El 20 de mayo de 2002, varios ciudadanos presentaron por escrito su oposición a algunas de las enmiendas propuestas. (Ap. 3, págs. 164-171.) Las vistas públicas para la discusión sobre las enmiendas propuestas y la participación de la ciudadanía se llevaron a cabo los días 28 y 30 de mayo, y 3, 10 y 17 de junio de 2002. (Ap. VIII del Escrito de Mostrar Causa del Procurador General, págs. 22-91.)
*1017 El Club Gallístico presentó, el 6 de junio de 2002, una querella ante la Oficina del Procurador del Ciudadano, en la cual le pidió su intervención, pues las enmiendas sugeridas resultaban nocivas a la industria gallística. (Ap. 3, págs. 160-177.) Dicha querella fue acogida por la Procuradora Especializada de Pequeños Negocios, la señora Ana Lourdes Rivera Valcárcel, bajo las disposiciones de la LEFAR. (Ap. I del Escrito de Mostrar Causa del Procurador General, págs. 1-2.) El 29 de julio de 2002, se llevó a cabo una reunión entre funcionarios de la Oficina del Procurador del Ciudadano y funcionarios del DRD. Además, según lo requiere la LEFAR, la Procuradora de Pequeños Negocios le solicitó al DRD que sometiera un informe de Análisis de Flexibilidad Administrativa y de Lidia de Gallos. (Ap. II del Escrito de Mostrar Causa del Procurador General, págs. 3-4.)
El DRD solicitó una prórroga para someter dicho análisis el 17 de septiembre de 2002 y, sin embargo, sin someter dicho análisis, presentó el reglamento con las enmiendas en el Departamento de Estado dos (2) días antes de solicitar la prórroga, el 12 de septiembre de 2002. El reglamento entró en vigor a los treinta (30) días después de su radicación, el 12 de octubre de 2002. (Ap. 1, págs. 1-69.)
El 7 de octubre de 2002, la Procuradora Especializada de Pequeños Negocios, rindió un informe sobre el Reglamento Administrativo y de Lidia de Gallos de Puerto Rico. (Ap. 4, págs. 178-184.)
En el mismo expresó lo siguiente:
[[Image here]]

El Departamento de Recreación y Deportes obvió los procedimientos de la Ley de Flexibilidad Administrativa y Reglamentaria para el Pequeño Negocio, y sin presentar el análisis inicial de flexibilidad, procedió a someter el Nuevo Reglamento de Lidia de Gallos al Departamento de Estado.

El Sr. Santos envió copia del nuevo reglamento el 23 de septiembre de 2002 a nuestra oficina, y luego de revisarlo, encontramos que el reglamento, aunque adoptó varias de las recomendaciones que sometió la Oficina del Procurador de Pequeños Negocios, hizo cambios significativos en el nuevo reglamento que no estaban incluidos en las enmiendas propuestas por el Departamento de Recreación y Deportes y que fueron llevadas a vistas públicas.

[[Image here]]

Conclusión

La versión final sometida al Departamento de Estado del Nuevo Reglamento Administrativo y de Lidia de Gallos resulta onerosa. Las multas impuestas y que no fueron presentadas en las enmiendas sometidas, resultaría en una carga económica a las galleras. Este reglamento va en contra del espíritu y propósito de la Ley de Flexibilidad Administrativa y Reglamentaria para el Pequeño Negocio, que en su exposición de motivos lee: “Mediante la aplicación de esta Ley, las agencias gubernamentales tendrían que ser creativas, conocer la estructura económica de la Industria que regula, y finalmente reglamentar en forma tal que no se le imponga cargas indebidas al sector que más aporta al crecimiento de la economía, específicamente los pequeños comerciantes.
Es nuestra recomendación al Departamento de Recreación y Deportes que revise y someta dicho documento al Análisis de Flexibilidad requerido en la Ley Núm. 454 de 28 de diciembre de 2000, la Ley de Flexibilidad Administrativa y Reglamentaria para el Pequeño Negocio inmediatamente. En lo que respecta a las multas, las mismas deben mantenerse en los niveles originales. También es prudente y necesario se flexibilice la operación, permitiéndose a estos pequeños negocios desarrollarse económicamente, pudiendo *1018 así ofrecer mejores facilidades para las peleas de gallos.

A tono con la facultad que me confiere la Ley 454 (supra) de 28 de diciembre de 2000, y la Ley 134 de 30 de junio de 1977, según enmendada, le concedo al Secretario del Departamento de Recreación y Deportes un término de diez (10) días laborables para que conteste este informe. (Enfasis suplido.)

[[Image here]]
(Ap. 4, págs. 179 y 184.)
El 15 de octubre de 2002, se celebró una reunión entre los directores de varios clubes gallísticos, sus respectivos asesores legales y funcionarios de la Oficina del Procurador del Ciudadano. El Director de la Oficina del Procurador del Ciudadano sometió al DRD el 16 de octubre de 2002, los argumentos en oposición a las enmiendas al reglamento, entre ellos, las multas impuestas, según fueran discutidos en la reunión del 15 de octubre. (Ap. m del Escrito de Mostrar Causa del Procurador General, págs. 8-9.)
El DRD sometió ante la Oficina del Procurador del Ciudadano un documento titulado “Informe sobre Reglamento Administrativo y de Lidia de Gallos de Puerto Rico”, el 21 de octubre de 2002. En dicho documento, sin someterse a la jurisdicción de la Oficina del Procurador del Ciudadano, se discute la facultad del Secretario del DRD para reglamentar e imponer multas y la necesidad de las enmiendas aprobadas, en especial las multas aumentadas y el impacto económico positivo de las demás enmiendas aprobadas. (Ap. IV del Escrito de Mostrar Causa del Procurador General, págs. 10-12.) En esa misma fecha, se celebró otra reunión entre funcionarios del DRD y la Oficina del Procurador del Ciudadano. El 22 de octubre de 2002, el Procurador Interino de Pequeños Negocios, el señor Rolando J. Meléndez Aponte, le envió una carta al DRD resumiendo lo allí discutido sobre la imposición de multas y el uso exclusivo de las facilidades de las galleras para el deporte gallístico. Además, les solicitó respuesta y les recordó que aún no habían sometido el informe de impacto negativo. (Ap. V del Escrito de Mostrar Causa del Procurador General, págs. 13-15.)
Finalmente, el 25 de octubre de 2002, el DRD presentó ante la Procuradora de Pequeños Negocios, el informe de impacto negativo, nuevamente sin someterse a la jurisdicción. (Ap. VI del Escrito de Mostrar Causa del Procurador General, págs. 16-18.) La Procuradora de Pequeños Negocios respondió a dicho informe el 4 de noviembre de 2002, expresando que el mismo no cumplía con la LEFAR, entre otras razones, por su contenido, pues no era un análisis de flexibilidad y se había aprobado el reglamento del DRD sin haberse presentado, como lo requiere la ley. (Ap. VII del Escrito de Mostrar Causa del Procurador General, págs. 19-21.) Sin embargo, expresó que una vez se cumpliera con la LEFAR, el reglamento debía “ser representado (sic) al Departamento de Estado, puesto qúe, salvo unas pequeñas excepciones, el reglamento va a ser de gran ayuda para el desarrollo del deporte de caballeros”. (Ap. VII del Escrito de Mostrar Causa del Procurador General, pág. 21.)
Impugnando la aprobación del Reglamento Administrativo y de Lidias de Gallos de Puerto Rico, Reglamento Núm. 6519 del 12 de septiembre de 2002, la parte recurrente Club Gallístico, recurre ante nos.
II
Expuestos los hechos pertinentes a la controversia ante nuestra consideración, procedemos a exponer la norma jurídica aplicable.
A
El poder de reglamentación del DRD
La sección 3 de la Nueva Ley de Gallos de Puerto Rico, establece:

*1019
“El Departamento de Recreación y Deportes queda por la presente investido de todos los poderes y facultades necesarios para dirigir, reglamentar y controlar todas y cada una de las actividades relacionadas con el deporte gallístico, tales como: construcción de galleras, fijación de temporadas para funcionamiento del deporte, clasificación de y expedición de licencias para galleras, ferias, exhibiciones, nombramientos de tribunales de honor para decisiones en cuestiones que puedan surgir no previstas por ley o reglamentación, nombramientos de directores de torneos y justas, cronometristas y jueces especiales, todo siguiendo las limitaciones y directivas siguientes. (Enfasis suplido.)

[[Image here]]
15 L.P.R.A. see. 294.
Conforme lo anterior, el DRD tiene completa facultad y poder para reglamentar todo lo relacionado al deporte gallístico. El Artículo 11 de la Ley Orgánica del DRD, le concede facultad al Secretario del DRD para aprobar, enmendar o revocar cualquier reglamento que sea necesario. Establece:

“El Secretario tendrá poder para aprobar, enmendar o revocar aquellas reglas, reglamentos, órdenes, resoluciones y determinaciones necesarias para el cumplimiento de este Capítulo. Las reglas y reglamentos que no sean de carácter interno serán promulgadas conforme a lo dispuesto en las secs. 3101 (sic) [2121 ] et seq. de este título. ”

3 L.P.R.A. sec. 442j.
El DRD debe aprobar o enmendar reglamentos de acuerdo a lo establecido en la LPAU. La sección 2.1 de la LPAU establece el procedimiento que deben seguir las agencias administrativas al aprobar o enmendar reglamentos. Establece:

“Siempre que la agencia pretenda adoptar, enmendar o derogar una regla o reglamento, publicará un aviso en un periódico de circulación general en Puerto Rico. [...]. El aviso contendrá un resumen o explicación breve de los propósitos de la propuesta acción, una cita de la adopción legal que autoriza dicha acción y la forma, el sitio, los días y las horas en que se podrán someter comentarios por escrito o solicitar por escrito una vista oral sobre la propuesta acción con los fundamentos que a juicio del solicitante hagan necesaria la concesión de dicha vista oral e indicará el lugar y dónde estará disponible al público el texto completo de la reglamentación a adoptarse. ”

3 L.P.R.A. see. 2121.
Asimismo, la sección 2.3 de la LPAU, establece en cuanto a la- oportunidad que debe darle la. agencia administrativa a la ciudadanía para proveer comentarios:

“La agencia proveerá oportunidad para someter comentarios por escrito durante un término no menor de treinta (30) días, contados a partir de la fecha de la publicación del aviso. ”

3 L.P.R.A. see. 2122.
Además, la sección 2.3 de la LPAU, le concede discreción a la agencia administrativa para determinar si celebra una vista pública, excepto que una ley la haga mandatoria. 3 L.P.R.A. 2123. Al aprobar el reglamento, la agencia no sólo tomará en consideración los comentarios escritos y orales de la ciudadanía, sino que también deberá considerar su experiencia, competencia, técnica, conocimiento especializado, discreción y juicio. See. 2.4 de la LPAU, 3 L.P.R.A. 2124. Una vez el reglamento sea aprobado, si se presenta una acción de *1020 nulidad, el mismo no perderá su vigencia, excepto que la ley establezca lo contrario. Sec. 2.7(c) de la LPAU, 3 L.P.R.A. 2127.
Nuestro más alto foro ha expresado que la LPAU exige que para que una agencia administrativa pueda aprobar un reglamento, tiene que llevar a cabo un procedimiento formal, el cual tiene que cumplir con los siguientes requisitos: 1) notificar al público de la reglamentación a adoptarse; 2) proveer una oportunidad para la participación ciudadana; 3) presentar la reglamentación ante el Departamento de Estado para la aprobación por su Secretario; y 4) publicación de la reglamentación. Este procedimiento formal de reglamentación aplica a todas las reglas o reglamentos aprobadas por las agencias administrativas, excepto aquellas reglas denominadas interpretativas. Municipio de San Juan v. Junta de Calidad Ambiental, opinión de 14 de diciembre de 2000, 2000 J.T.S. 193, págs. 475-475.
Por otro lado, el Artículo 21 de la Ley Orgánica del DRD, le concede facultad al Secretario para imponer multas hasta un máximo de cinco mil dólares ($5,000.00) por violaciones a las disposiciones de los reglamentos u órdenes emitidos al amparo de la Ley Orgánica del DRD. Además, podrá imponer una multa hasta de diez mil dólares ($10,000.00), cuando la violación envuelva una actividad de deporte profesional. 3 L.P.R.A. 442s.
B
La Ley de Flexibilidad Administrativa y Reglamentaria para el Pequeño Negocio
La LEFAR, Ley Núm. 454 del 28 de diciembre de 2000, fue creada con el propósito de establecer un procedimiento, el cual las agencias gubernamentales utilicen para analizar y diseñar reglamentos que no afecten o impongan cargas onerosas a los pequeños negocios. Se persigue el objetivo de que las agencias gubernamentales tomen conocimiento del impacto que sus regulaciones puedan tener sobre los pequeños negocios. Todo ello, se hará a través de un proceso analítico que deberán seguir para determinar cómo su reglamentación puede solucionar los problemas que pueda a su vez ocasionar, sin producir problemas de competencia. Exposición de Motivos, P. de la C. 3038 (28 de diciembre de 2000).
Para poder seguir dicho proceso analítico, las agencias gubernamentales deberán conocer la estructura económica de la industria de pequeños negocios que pretenden regular. Una vez tomen, conocimiento de ello, podrán reglamentar, sin imponerle cargas indebidas a los pequeños comerciantes. De la misma forma, dicho proceso analítico permite la intervención de los empresarios para que aporten en el proceso con sus comentarios sobre las prácticas de los pequeños negocios, de manera que se asegure el fiel cumplimiento de la reglamentación. Exposición de Motivos, supra.
El Artículo 4 de la LEFAR establece que cada agencia debe publicar en el Departamento de Estado y en la Oficina del Procurador de Pequeños Negocios los reglamentos que regulan su jurisdicción, expresando una breve descripción del mismo y el probable impacto económico significativo que pueda tener en un número sustancial de pequeños negocios. Debe contener un resumen de la naturaleza de la reglamentación, los objetivos y bases legales para expedir la reglamentación y un programa aproximado pata complementar los trámites de aprobación de la reglamentación. 3 L.P.R.A. see. 2253.
Además, se debe informar al Procurador de Pequeños Negocios la agenda para flexibilizar la reglamentación para sus comentarios con el nombre y número de teléfono de un oficial de la agencia. La agencia deberá publicar dicha agenda, un sólo día, en un periódico de circulación general y nada impide que ésta considere cualquier asunto pertinente a la reglamentación, aunque no se haya incluido en la agenda. Art. 4 de LEFAR, supra.
De la norma antes expresada, surge que cuando una agencia va a aprobar un reglamento que afecte los pequeños negocios, se requiere la intervención del Procurador de Pequeños Negocios, para que éste *1021 someta sus comentarios a la agenda para flexibilizar la reglamentación. Como parte de ello, la agencia deberá someter un análisis de flexibilidad administrativa, el cual, de acuerdo al Artículo 5 de la LEFAR, supra, debe tener una declaración breve de la necesidad y objetivos de la reglamentación. Además, un resumen de la opinión pública en respuesta al análisis inicial de flexibilidad reglamentaria, la evaluación de la agencia a esos asuntos y una declaración de los cambios establecidos en el reglamento como resultado de dichos comentarios.
El análisis de la agencia debe tener, entre otros aspectos, una descripción y el número estimado de pequeños negocios que le aplicará el reglamento y las medidas que se tomarán para minimizar cualquier impacto económico significativo que pueda provocar. Dicho análisis deberá cubrir “las razones de hechos legales y política pública”, para aceptar o rechazar otras alternativas del reglamento a promulgarse. Este análisis estará a la disposición del público y se publicará por el Departamento de Estado, antes de aprobarse el reglamento por la agencia gubernamental. Art. 5 de LEFAR, 3 L.P.R.A. see. 2254.
C
Alcances de la revisión judicial
La sección 2.7(b) de la LPAU establece que cualquier acción para impugnar la validez de una regla o reglamento, debe ser presentada ante el Tribunal de Circuito de Apelaciones en un plazo de treinta (30) días siguientes a la fecha de vigencia de dicha regla o reglamento. 3 L.P.R.A. 2127.
Al revisar la validez de una reglamentación aprobada por una agencia administrativa, el tribunal debe examinar lo siguiente: 1) si la actuación administrativa está autorizada por ley; 2) si se delegó el poder de reglamentación; 3) si la reglamentación promulgada está dentro de los poderes delegados; 4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley orgánica y de las leyes especiales; y 5) si la reglamentación es arbitraria o caprichosa. El reglamento promulgado por la agencia debe estar acorde con las disposiciones estatutarias ante las cuales se promulgó; de lo contrario, deberá ceder ante el mandato legislativo. Pérez Santos v. Comisión de Relaciones del Trabajo del Servicio Público, opinión de 4 de octubre de 2002, 2002 J.T.S. 139, pág. 278; M. & B. S., Inc. v. Dpto. de Agricultura, 118 D.P.R. 319, 326 (1987).
Las agencias administrativas carecen de facultad para promulgar reglamentos que impongan requisitos adicionales a los establecidos por los estatutos que rigen la revisión de la agencia. Es decir, el reglamento promulgado no puede contener reglas arbitrarias o caprichosas, sino razonables. El tribunal deberá determinar si existe una relación racional entre el reglamento y el estatuto que le concede facultad a la agencia administrativa para reglamentar. Por ello, el ataque contra la reglamentación debe demostrar que las normas establecidas son caprichosas, pues las mismas están fundamentadas en motivos desligados del propósito para la reglamentación. Franco Dominicci v. Departamento de Educación, opinión de 30 de junio de 1999, 99 J.T.S. 109, pág. 1252; Carrero v. Dpto. de Educación, 141 D.P.R. 830, 838 (1996).
Las agencias administrativas, por su conocimiento especializado sobre el área reglamentada, están en mejor posición para establecer los efectos de las violaciones a sus reglamentos. E.L.A. v. Frigorífico y Almacén de Turabo, Inc., opinión de 28 de agosto de 2001, 2001 J.T.S. 125, pág. 71; Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425, 438 (1997).
D
Teoría de abstención judicial ante planteamientos de inconstitucionalidad de una ley
Cuando se cuestiona la validez de una ley o se suscita alguna duda sobre su constitucionalidad, es principio cardinal de derecho que los tribunales se aseguren que no existe otra posible interpretación razonable de la ley. Dpto. de la Familia v. Soto, 147 D.P.R. 618, 629 (1999); Caquías Mendoza v. Asociación de Residentes, 134 D. *1022 P.R. 181, 188 (1993).
Los tribunales se deben abstener de declarar un estatuto inconstitucional, a menos que sea estrictamente necesario y que la controversia bajo su consideración no pueda ser adjudicada por otros fundamentos. Nadal Arcelay v. Dpto. de Recursos Naturales y Ambientales, opinión de 7 de abril de 2000, 2000 J.T.S. 71, pág. 968; Pueblo v. Yip Berríos, opinión de 30 de enero de 1997, 97 J.T.S. 14, pág. 576. (Casos citados.) Si se puede resolver la controversia presentada ante el tribunal, por otra interpretación sin entrar al planteamiento de constitucionalidad de la ley, éste debe ser el curso decisorio del tribunal como norma de abstención o autolimitación. Milán v. Muñoz, 110 D.P.R. 610, 619 (1981).
Un tribunal debe hacer lo posible para evitar dictámenes precipitados en alegaciones sobre la inconstitucionalidad de una ley y sólo debe decidir las mismas cuando no pueda disponer del caso de otra manera. Debe abstenerse de adjudicar planteamientos constitucionales si puede resolverse el caso: (1) mediante un análisis legal válido; (2) en armonía con los criterios de las partes y en consonancia con los mejores fines de la justicia; (3) de existir una interpretación razonable que permita soslayar la cuestión constitucional; y (4) pueda resolver la controversia por otros fundamentos. Molina v. C.R.U.V., 114 D.P.R. 295, 297 (1983). (Casos citados.)
III
Aplicación de la norma jurídica
Expuesta la norma jurídica, procedemos a aplicarla a los hechos ante nuestra consideración.
Alega la parte recurrente Club Gallístico, en síntesis que incidió el DRD al aprobar el Reglamento Administrativo y de Lidias de Gallos de Puerto Rico, Reglamento Núm. 6519 del 12 de septiembre de 2002, pues incumplió con la LEFAR y con la LPAU.
Le asiste la razón y el derecho.
La Nueva Ley de Gallos de Puerto Rico, le confiere la facultad y el poder al DRD para reglamentar todo lo relacionado con el deporte gallístico. A su vez, la Ley Orgánica del DRD le otorga facultad al Secretario para aprobar, enmendar o revocar cualquier reglamento. Para ello, el DRD debe cumplir con las disposiciones legales especiales de la LPAU y de la LEFAR, en particular sobre el efecto de la reglamentación a los pequeños negocios.
Es un hecho no controvertido que DRD no cumplió con los requisitos de la LEFAR al aprobar el Reglamento Administrativo Núm. 6519 de 2002, alegando erróneamente que la autoridad en ley para reglamentar el deporte de gallos está bajo su jurisdicción exclusiva. De la lectura de la LEFAR, surge claramente que el legislador dispuso que las agencias gubernamentales, al aprobar sus reglamentos, deben analizar y perseguir que el mismo no imponga cargas onerosas a los negocios pequeños ni afecten su desarrollo. Define la LEFAR como negocio pequeño, aquél que tenga quince (15) empleados o menos. Bajo dicho principio estatutario, las agencias gubernamentales deben considerar el impacto económico que la regulación pueda tener en los negocios pequeños.
Para cumplir con dicho propósito, se le requiere a las agencias gubernamentales, bajo dicha ley especial, que conozcan las estructuras económicas de la industria de los negocios pequeños que se puedan impactar con la reglamentación que se propongan aprobar. A tales fines, la LEFAR le concede autoridad al Procurador de Pequeños Negocios para que reaccione a la reglamentación sugerida.
Bajo el estatuto especial que constituye la LEFAR, la agencia gubernamental que promueva la *1023 reglamentación debe preparar un análisis de flexibilidad administrativa, el cual debe tener, entre otros aspectos, una declaración breve de la necesidad y objetivos de la reglamentación propuesta. Se debe incluir en dicho análisis una descripción y definir el número de los pequeños negocios afectados y las medidas para minimizar el “impacto económico significativo”, que la reglamentación pueda causar. El informe debe cumplir las razones legales y de política pública que se quieren regular. Finalmente, el análisis debe estar disponible al público y publicarse por el Departamento de Estado, antes de aprobarse el reglamento propuesto por la agencia gubernamental.
El DRD no cumplió con presentar a la oficina del Procurador de Pequeños Negocios, el informe de análisis de flexibilidad y se limitó a presentar una carta a dicha oficina, luego de aprobado el Reglamento Administrativo Núm. 6519 de 2002, donde resumen los artículos enmendados, los horarios dispuestos para las galleras, el número de jugadas permitidas y aspectos sobre el precio de boletos de admisión. Dicha carta no tenía ninguna descripción y análisis del impacto económico que le podía causar a las galleras como negocios pequeños, las medidas si alguna, para minimizarlo y la razón legal y de política pública para aprobar el reglamento. Véase, Ap. VI, págs. 16-18.
Del documento presentado, podemos colegir, primero, que si la carta del DRD fuera aceptada como un informe sobre un análisis de flexibilidad, se presentó luego de aprobado el reglamento, contrario a la clara disposición de la LEFAR que requiere que, previo a aprobarse el reglamento por la agencia gubernamental, se realice el análisis de flexibilidad para que éste ayude a evaluar los efectos de la reglamentación en los negocios pequeños. Segundo, del análisis mesurado de dicha carta, concluimos que no cumple con los requisitos legales para que se considere como un informe de flexibilidad, pues es una mera descripción de alguno de los artículos del reglamento, pero totalmente ausente de un análisis económico sobre el impacto en las galleras como negocios pequeños o las medidas necesarias para minimizarlo, según lo requiere la ley. Tercero, la LEFAR como ley especial, requiere que antes de aprobarse cualquier reglamento de una agencia gubernamental que afecte negocios pequeños, se notifique el análisis de flexibilidad que prepare, al Departamento de Estado para que se publique y la ciudadanía tenga la oportunidad de reaccionar al mismo. La carta del DRD sobre el análisis económico referido a la LEFAR no fue remitido al Departamento de Estado ni fue publicada. Quinto, la Procuradora de Pequeños Negocios, no pudo exponer su posición antes de aprobarse el reglamento por el DRD, pues éste no cumplió con lo dispuesto por ley.
La propia Procuradora de Pequeños Negocios admite que la reglamentación aprobada debe “ser re-presentado (sic) al Departamento de Estado, puesto que, salvo unas pequeñas excepciones, el reglamento va a ser de gran ayuda para el desarrollo del deporte de caballeros”, una vez cumpla con la presentación del informe negativo, el cual alega nunca se presentó conforme a la LEFAR. (Ap. VII, pág. 21, Escrito de Mostrar Causa DRD.)
Ante las conclusiones esbozadas, es claro que el DRD aprobó el Reglamento Administrativo Núm. 6519 del 2002, de forma ilegal y contrario a derecho. Por lo tanto su registro ante el Departamento de Estado no tiene efecto legal alguno y queda vigente el Reglamento Administrativo Núm. 5562 del 1997, que fue enmendado por el antes citado.
Por último, la alegación de la parte recurrente que el reglamento es inconstitucional, pues menoscaba obligaciones contractuales, es innecesaria considerarla, pues estamos resolviendo la controversia mediante el análisis estatutario de la validez de la aprobación del Reglamento Núm. 6519 de 2002, sin entrar en los aspectos constitucionales. Una vez declarado inválido el reglamento por defectos en su aprobación, no hay que entrar en aspectos constitucionales sobre su contenido, pues no está vigente.
IV
Por los anteriores fundamentos, se expide el auto de revisión judicial, se declara inválido y queda sin efecto *1024 el Reglamento Administrativo y de Lidias de Gallos de Puerto Rico, Reglamento Núm. 6519 del 12 de septiembre de 2002, por incumplimiento con la LEFAR. Ello tiene el mismo efecto legal que si el Reglamento Núm. 6519 de 2002, nunca se hubiera aprobado. Por lo tanto, queda vigente el reglamento anterior que éste enmendó, el Reglamento Administrativo y de Lidias de Gallos de Puerto Rico, Núm. 5562 del 5 de marzo de 1997.
Una vez el Departamento de Recreación y Deportes cumpla con las disposiciones de dicha ley, podrá aprobar las enmiendas al Reglamento Administrativo y de Lidias de Gallos de Puerto Rico, conforme a derecho.
Notifíquese inmediatamente por facsímil, teléfono y por la vía ordinaria.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Heana Oquendo Graulau Secretaria General